IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**MONIQUE FOUNTAIN,**

  **PLAINTIFF,**

v.          CASE NO.: 3:21-CV-04024

**LAKEVIEW CENTER, INC.**

  **DEFENDANT.**
_____/

## COMPLAINT

Plaintiff, Monique Fountain, (hereinafter referred to as the "Plaintiff" or "Fountain"), by and through the undersigned counsel, sues the Defendant, Lakeview Center, Inc. (hereinafter referred to as the "Defendant" or "Lakeview"), and alleges as follows:

## INTRODUCTION

1. Plaintiff brings this action for interference and violation of her federally protected rights under the Family Medical Leave Act, 29 U.S.C.S. §§ 2601; 2611-2654; and Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203.

## JURISDICTION AND VENUE

2. The jurisdiction of the Court over this controversy is invoked pursuant to 29 U.S.C. § 2617(a)(2) and 42 U.S.C. §§ 12111-12117, 12203.

1

3. Defendant is considered an employer within the terms and conditions of the 29 USC §§ 2611 et seq. ("FMLA"), as Defendant was both engaged in commerce or in an industry or activity affecting commerce and employed more than 50 employees for each working day during each of 20 or more calendar weeks in each calendar year relevant hereto within a seventy-five (75) mile radius of Plaintiff's Pensacola, Florida worksite.

4. Plaintiff worked for Defendant from September 2011, until December 11, 2020. Plaintiff is considered an "eligible employee" for purposes of the FMLA as she has been employed: (1) for at least 12 months by Defendant, and (2) for at least 1,250 hours of service with Defendant in the previous 12-month period.

5. The FMLA does not contain an exhaustion requirement and Plaintiff is not required to exhaust administrative remedies before bringing suit.

6. This action lies in the Northern District of Florida, Pensacola Division, because the action arose in this judicial district.

7. Plaintiff has complied with all conditions precedent and administrative remedies have been exhausted and jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and the Florida Civil Rights Act of 1992, as amended, Chapter 760 et seq., Florida Statutes. On January 14, 2021, Plaintiff filed a Charge of Discrimination with the Florida Commission on Human Relations ("FCHR" No.: 202128058) and the United States Equal Employment Opportunity Commission

("EEOC" No.: 15D202100238). On July 13, 2021, the FCHR issued a determination pursuant to Fla. Stat. § 760.11(3). Plaintiff thereafter requested her ninety (90) day Notice of Right to Sue letter from the EEOC which was received on September 21, 2021.

## PARTIES

8. Plaintiff a citizen of the State of Florida who resides in Pensacola, Florida.

9. Defendant, Lakeview is a private, non-profit organization whose purpose is to provide a comprehensive array of community services, including substance abuse/mental health counseling, child welfare services, and vocational services. Defendant's principal place of business located in Pensacola, Florida.

## FACTS

10. Plaintiff is an African American female.

11. Plaintiff was employed by Lakeview Center, Inc. ("Lakeview") in Pensacola, Florida from September, 2011, until her termination on December 11, 2020.

12. Plaintiff was hired by Lakeview's Behavioral Health division on November 7, 2011, as a Behavior Health Technician.

13. Plaintiff became an Admissions Coordinator and, later, an Access Manager where she had oversight responsibilities for employees who maintained

new and existing client profiles for Lakeview in Adult Psych and Adult Outpatient.

14. On July 13th 2020, Plaintiff was given an additional department to manager, Children Services, with no additional pay and increased employment duties such as additional staff and scheduling duties.

15. Plaintiff performed the duties and responsibilities of her position in a satisfactory manner.

16. On or about February 2020, Plaintiff learned that she was pregnant and thereafter notified Lakeview of her pregnancy.

17. Around this same time, Ms. Deanna Carmichael became Plaintiff's immediate supervisor.

18. Prior to her maternity leave, Plaintiff was working as the lead manager for three departments.

19. Plaintiff applied and was approved for twelve (12) weeks of family medical leave (FMLA), starting on October 13, 2020, with a return date of January 13, 2021.

20. Prior to Plaintiff taking FMLA leave, Ms. Carmichael made it clear that she would need to stay in contact and communicate with her about her various departments while on leave.

21. Plaintiff went out on FMLA leave on October 13, 2020.

22. While on FMLA leave, Ms. Carmichael would text Plaintiff. Ms. Carmichael claimed to be checking in on her and her newborn baby, but she always discuss work issues with Plaintiff.

23. Between October 13, 2020 and November 18, 2020, while Plaintiff was on FMLA leave, Ms. Carmichael contact Plaintiff no less than eight times to discuss work related issues.

24. Fearing for her job, Plaintiff felt obligated to take Ms. Carmichael's calls and discuss work and staffing issues.

25. On November 16, 2020, Ms. Carmichael contacted Plaintiff about staffing changes that she wanted to make in one of her departments and to make a decision and get back to her.

26. Ms. Carmichael would always tell Plaintiff to take as much time as she needed with her newborn and to take opportunity to enjoy this time, but Ms. Carmichael never stopped communicating with Plaintiff about work or having her perform managerial duties while out on FMLA.

27. On November 18th, 2020, because of the constant work related calls and communication from Ms. Carmichael, and out of fear of losing her job, Plaintiff cut her FMLA leave short and return to work three days a week.

28. Upon Plaintiff's return, Ms. Carmichael increased her workload to the point that she knew Plaintiff would not be able to perform such duties on a three

day a week schedule.

29. On December 8th, 2020, Plaintiff was diagnosed with postpartum depression.

30. Plaintiff thereafter notified Ms. Carmichael of her postpartum depression diagnosis.

31. On the same day Plaintiff notified Ms. Carmichael of her diagnosis, Carmichael reprimanded Plaintiff for a staffing change that had been decided and implemented following a conference call Ms. Carmichael had with Plaintiff while Plaintiff was out on FMLA.

32. Plaintiff's postpartum depression and increased workload by Ms. Carmichael was taking its toll on her, so she asked Ms. Carmichael for assistance in managing the front desk staff.

33. Roughly two days later, Plaintiff was required to participate in a Human Resources call with Ms. Carmichael wherein Ms. Carmichael informed Plaintiff that she felt that Plaintiff could not perform her job duties.

34. Plaintiff was informed that she was being placed on thirty (30) days of leave in order to try and find a different positon within the company otherwise her employment would be terminated.

35. On January 11, 2020, after ten (10) years of employment with Defendant, Plaintiff's was employment was terminated.

## FIRST CAUSE OF ACTION
(FMLA INTERFERENCE)

36. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 3 through 5 and 8 through 35 of this complaint with the same force and effect as if set forth herein.

37. "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).

38. Plaintiff was an employee entitled to a benefit under the FMLA and Defendant denied her that benefit.

39. During Plaintiff's FMLA leave, Defendant required Plaintiff to perform work, including making staffing decisions that ultimately lead to her termination.

40. Requiring Plaintiff to perform work while on FMLA leave constituted an actionable denial and interference with the Plaintiff's FMLA rights.

41. At the time of Plaintiff's termination, Defendant had more than sufficient knowledge that Plaintiff had not exhausted all of her FMLA leave.

42. Defendant had more than sufficient knowledge that her postpartum depression was a serious health condition and an FMLA-qualifying medical condition.

43. Defendant knew of Plaintiff's qualifying medical condition and refused to discuss any type of FMLA leave.

44. Defendant should have notified Plaintiff of her eligibility to take FMLA leave for her postpartum depression within five business days.

45. The FMLA required Defendant to give Plaintiff written notice detailing her specific expectations and obligations related to the FMLA and explaining any consequences of her failure to meet these obligations.

46. Defendant never provided Plaintiff with any type of written notice regarding her FMLA rights related to her postpartum depression, thus interfering with and denying her substantive rights under the FMLA.

*47.* Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

48. Plaintiff has retained the undersigned attorney to assist her, in the prosecution of this action, and she is obligated to pay said attorney a reasonable fee for his professional services.

SECOND CAUSE OF ACTION
(FMLA Retaliation)

49. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 3 through 5 and 8 through 35 of this complaint with the same force and effect as if set forth herein.

50. On October 13, 2020, Plaintiff went out on FMLA leave, a statutorily protected act.

51. On November 18, 2020, after being constantly harassed and required to work while on FMLA leave, Plaintiff returned to work.

52. After having returned to work, Plaintiff was reprimanded for decisions she was required to make while on FMLA leave.

53. On December 8, 2020, Plaintiff informed Defendant of her postpartum depression diagnosis and asked for assistance.

54. At the time of Plaintiff's termination, Defendant had more than sufficient knowledge that Plaintiff had not exhausted all of her FMLA leave.

55. Defendant had more than sufficient knowledge that her postpartum depression was a serious health condition and an FMLA-qualifying medical condition.

56. Defendant knew of Plaintiff's qualifying medical condition and refused to discuss any type of FMLA leave.

57. Roughly two days later, Plaintiff was required to participate in a Human Resources call with Ms. Carmichael wherein Ms. Carmichael informed Plaintiff that she felt that Plaintiff could not perform her job duties.

58. Plaintiff was informed that she was being placed on thirty (30) days of leave in order to try and find a different positon within the company otherwise her

employment would be terminated.

59. On January 11, 2020, after ten (10) years of employment with Defendant, Plaintiff's was employment was terminated.

60. Defendant acted with malice and retaliated against Plaintiff for engaging in a federally protected right.

*61.* Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

62. Plaintiff has retained the undersigned attorney to assist her, in the prosecution of this action, and she is obligated to pay said attorney a reasonable fee for his professional services.

THIRD CAUSE OF ACTION
*DISABILITY DISCRIMINATION*
*AMERICANS WITH DISABILITIES ACT, (ADA)*

63. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 7 through 35 of this complaint with the same force and effect as if set forth herein.

64. The Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms,

conditions, and privileges of employment.

65. At all times material hereto, Plaintiff was an employee of Defendant and Defendant was an employer within the meaning of Americans with Disabilities Act, (ADA), as the Defendant employed more than 15 employees.

66. As such, Defendant is prohibited from discriminating against any qualified individual with a disability.

67. Plaintiff is, and was at all time pertinent hereto, a qualified individual with a disability.

68. Plaintiff suffers from postpartum depression which is a condition that impacts plaintiff's mental, cognitive and physical abilities.

69. Plaintiff's postpartum depression affects her emotional, physical mental and cognitive functions.

70. Postpartum depression is an impairment and disability within the meaning of the ADA as it substantially limits Plaintiff's ability to perform major life activities as compared to most people in the general population.

71. Plaintiff's postpartum depression substantially limited her ability to perform the major life function of eating, sleeping, concentration and effected other mental and cognitive functions.

72. Upon learning of Plaintiff's postpartum depression and requested accommodations and/or assistance, Defendant failed engage in a good faith

interactive process with Plaintiff to determine the reasonableness of her requested accommodation.

73. Upon learning of Plaintiff's postpartum depression and requested accommodations, Defendant was under an obligation to engage in a good faith interactive process with Plaintiff.

74. Defendant did not engage in a good faith dialogue with Plaintiff in an attempt to "identify the precise limitations" caused by Plaintiff's postpartum depression nor did Defendant "explore potential accommodations" to overcome those limitations.

75. Defendant's termination and disqualification of Plaintiff's employment on January 11, 2020, on the basis of her disability and Defendant's failure to make a good faith individual assessment to determine whether Plaintiff could be employed or whether a reasonable accommodations would enable her to be employed by Defendant, violated the ADA.

76. Any possible assertion that there was a viable business justification for the treatment of Plaintiff that lead to his termination, is entirely *pretextual* for Defendant's retaliation and discrimination against him for engaging in a protective activity and for any actual or perceived disability.

77. The adverse personnel action, the termination of Plaintiff's employment, clearly violated his statutory protected rights and constituted a

prohibited employment practice, contrary to the public policy of the under the Americans with Disabilities Act, (ADA).

78. As a result of the Defendant's violations of the ADA, Plaintiff has been substantially damaged, in that she has lost wages, associated job benefits; and in addition, she has sustained compensatory damages, based upon mental, psychological and emotional distress, and anxiety from difficult economic circumstances, resulting from her unlawful discharge.

FOURTH CAUSE OF ACTION
*DISABILITY RETALIATION*
*AMERICANS WITH DISABILITIES ACT, (ADA)*

79. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 7 through 35 of this complaint with the same force and effect as if set forth herein.

81. The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., prohibits employers from retaliating against qualified individuals for objecting to discriminatory acts or for requesting an accommodation.

82. Defendant terminated and disqualified Plaintiff from her employment in retaliation for questioning and objecting to Defendant's failure to discuss her accommodation requests and for requesting an accommodation.

83. Defendant acknowledged and regarded Plaintiff as disabled (perceived or otherwise) and as having an impairment.

84. When Plaintiff provided Defendant with sufficient information regarding her postpartum depression and requested a reasonable good faith accommodation, Plaintiff's requests became and were considered a statutorily protected activity under the ADA.

85. Defendant did not engage in a good faith dialogue with Plaintiff in an attempt to "identify the precise limitations" caused by Plaintiff's disability nor did Defendant "explore potential accommodations" to overcome those limitations.

86. Plaintiff questioned and objected to Defendant's failure to discuss her accommodation request and being placed on thirty (30) leave following her request for an accommodation.

87. Defendant's January 11, 2021, termination and disqualification of Plaintiff's employment was in retaliation for her seeking a good faith accommodation, her objecting to Defendant's discriminatory practices regarding her disability and requested accommodation, constituted a statutory protected activity and a prohibited employment practice, contrary to the public policy of and in violation of the ADA.

90. Any possible assertion that there was a viable business justification for the treatment of Plaintiff that lead to her termination, is entirely *pretextual* for Defendant's retaliation against her for engaging in the statutory protective activity of requesting a reasonable accommodation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment:

a) Declaring the acts and practices complained of herein are violation of the FMLA and ADA;

b) Enjoining and permanently restraining those violations of the FMLA and ADA;

c) Directing the Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practice are eliminated and do not continue to affect Plaintiff's employment opportunities;

d) Equitable relief in the form of reinstatement or front pay, as the court deems appropriate, pursuant to the ADA and/or FMLA;

e) Directing Defendant to place Plaintiff in the position she would have occupied but for Defendant's discriminatory treatment of her and make her whole for all earnings she would have received but for Defendant's discriminatory treatment, statutory damages for lost wages, benefits, and other compensation, plus interest thereon at the statutory rate, pursuant to the FMLA and ADA;

f) Awarding compensatory damages in the amount of the above-

requested award, pursuant to the ADA;

 g) Plaintiff further seeks declaratory, injunctive, and equitable relief pursuant to the ADA and FMLA;

 h) Awarding liquidated damages in the amount of the above-requested award, pursuant to 29 U.S.C.A. § 2617(a)(1)(A)(iii);

 i) Awarding Plaintiff attorney's fees, expert witness fees, and costs of this action, pursuant to the ADA, FMLA and Fed. R. Civ. P. 54 and such other relief as this Court may deem just and proper;

 j) Granting such other and further relief, equitable or otherwise, as the Court deems just and proper in the premises.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Dated: December 10, 2021.  By: */s/ Clayton M. Connors*
             CLAYTON M. CONNORS
             Florida Bar No.: 0095553
             Email: cmc@westconlaw.com
             **THE LAW OFFICES OF**
             **CLAYTON M. CONNORS, PLLC.**
             4400 Bayou Blvd., Suite 32A
             Pensacola, Florida 32503
             Tel: (850) 473-0401
             Fax: (850) 473-1388
             Attorney for Plaintiff